UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MENG KONG,

    Plaintiff,

v.

MICHAEL J. ASTRUE,

    Defendant.
_____/

No. C-11-0871 EMC

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**(Docket Nos. 18, 25)**

    Plaintiff Meng Kong brought this suit against Defendant Michael J. Astrue, Commissioner of Social Security, appealing the Commissioner's final decision to not award supplemental security income ("SSI") benefits during the period of July 25, 2003 through August 10, 2006.[1] Docket No. 18. Plaintiff and Defendant both move for summary judgment on the issue of whether the Commissioner's finding that Plaintiff lacked a severe impairment is supported by substantial evidence. For the reasons set forth below, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross-motion for summary judgment.

## I.    FACTUAL & PROCEDURAL HISTORY

    On July 25, 2003, Plaintiff Meng Kong filed an application for SSI benefits, alleging disability as of 1996 due to depression, insomnia, post-traumatic stress disorder ("PTSD"), back

---

[1] Plaintiff filed a subsequent application for SSI benefits on August 11, 2006, which was ultimately approved. Thus, the relevant benefits period is limited to the period prior to August 11, 2006. AR 494.

ache, constant fatigue, headache, and constant daily nightmares. AR 230. Plaintiff's claim was initially denied on February 20, 2004, and again on reconsideration on April 23, 2004. AR 196, 206. Plaintiff requested a hearing before an administrative law judge ("ALJ") on June 21, 2004, and appeared before ALJ Richard Laverdure on March 15, 2005. AR 211, 216.

On August 29, 2005, ALJ Laverdure issued an unfavorable decision, concluding that Plaintiff did not have a severe medical impairment. AR 21, 24. The ALJ evaluated Plaintiff's disability claim using the five-step sequential evaluation process for disability required under federal regulations. *See* 20 C.F.R. § 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

Before analyzing Plaintiff's application, ALJ Laverdure noted that Plaintiff had filed a previous application for SSI benefits, which was denied by ALJ William L. Akers on April 2, 1998. AR 26. Accordingly, ALJ Laverdure was required "to determine whether 'changed' circumstances have arisen in the time between the claimant's current application for SSI and a 1998 decision by [ALJ Akers] denying the claimant's prior SSI claim." AR 25. ALJ Laverdure concluded that there were changed circumstances "in the form of a change in the claimant's age category," as claimant had turned 55 and became a "person of advanced age" after ALJ Akers' denial, thus rebutting the presumption of continuing nondisability. AR 26-27.

Although the presumption of continuing nondisability was rebutted because of these changed circumstances, ALJ Laverdure was still required to give effect to ALJ Akers's findings so long as there was "no new material evidence or change in the law relating to these findings." AR 27. At

2

step one, ALJ Laverdure found that there was no new evidence to contradict ALJ Akers's finding that Plaintiff had not engaged in substantial gainful activity since at least October 12, 1993. AR 27. At step two, ALJ Laverdure found "no reason to disagree with [ALJ Akers's] finding that claimant has no severe physical impairments." AR 27 (emphasis omitted). As to whether Plaintiff suffered a severe mental impairment, ALJ Laverdure found that because ALJ Akers analyzed Plaintiff's case "through every step in the sequential disability determination process," ALJ Akers "must have found *some* impairment at Step 2 of the analysis." AR 28. However, ALJ Laverdure found that there was new material evidence that Plaintiff's condition had improved, and he made a new step two finding that Plaintiff had no severe mental impairment and was therefore not disabled. AR 28, 30.

After Plaintiff's request for review was denied by the Appeals Council, Plaintiff filed a complaint in District Court on November 14, 2006. AR 530. The Court granted Plaintiff's motion for summary judgment, remanding for additional proceedings and ordering the ALJ to re-evaluate and address certain diagnoses and testimony. AR 527. ALJ Laverdure held a new hearing on June 5, 2008, and issued another unfavorable hearing decision on March 3, 2009. AR 493-94. In this decision, ALJ Laverdure analyzed the medical opinions pursuant to *Orn v. Astrue* and found that the medical opinions were not credible or well-supported by other evidence. AR 499-503. ALJ Laverdure also found that Plaintiff's testimony was contradictory and not credible given diagnoses of malingering by examining professionals, and that testimony by Plaintiff's daughter was "un-enlightening" as to whether Plaintiff's failure to learn a job was the result of a medical impairment. AR 504. For these reasons, ALJ Laverdure again concluded that Plaintiff did not have a severe impairment, and ended his analysis at step two.

Plaintiff's request for review of ALJ Laverdure's new decision was denied on October 16, 2010. AR 480-82. Plaintiff filed this action for judicial review on February 24, 2011 pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and moved for summary judgment on July 26, 2011. Docket No. 18 at 1, 5 ("Motion"). In her motion for summary judgment, Plaintiff argues that ALJ Laverdure erred in determining that Plaintiff has no severe impairment because (1) ALJ Laverdure failed to give res judicata effect to ALJ Akers's prior step two finding, and (2) Plaintiff had presented sufficient evidence to meet the minimal step two burden. Motion at 11, 14. Defendant brings a

cross-motion for summary judgment, arguing that (1) ALJ Laverdure properly declined to give res judicata effect to ALJ Akers's prior finding because there was new and material evidence demonstrating that Plaintiff's condition had improved, and (2) ALJ Laverdure's step two finding is supported by substantial evidence. Docket No. 25 at 2, 9 ("Opp.").

## II. DISCUSSION

### A. Legal Standard

A court may disturb the final decision of the Social Security Administration "only if it based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir. 1993). Substantial evidence requires "more than a mere scintilla, but less than a preponderance." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (citations omitted). The court's review "must consider the record as a whole," and consider both that which supports as well as that which detracts from the Secretary's decision. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "If the evidence admits of more than one rational interpretation, [the court] must uphold the decision of the ALJ." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

As discussed above, ALJ Laverdure denied Plaintiff's application at step two of the five-step analysis. At step two, the issue is whether the claimant has one or more severe physical and/or mental impairments. Social Security regulations state that "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). Although the regulation uses the phrase "significantly limit," the relevant Social Security rulings establish that the inquiry at step two is actually quite limited. For example, SSR 85-28 provides:

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the

4

> person's impairment(s) has no more than a minimal effect on his or
> her physical or mental ability(ies) to perform basic work activities. . . .
>
> . . . .
>
> . . . . If such a finding is not clearly established by medical evidence,
> however, adjudication must continue through the sequential evaluation
> process.

SSR 85-28; *see also* SSR 86-8 ("An impairment is not severe if it is a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on the individual's physical or mental ability(ies) to perform basic work activities.").

Consistent with the Social Security rulings, the Ninth Circuit has held that "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.2d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Thus, step two serves as "a de minimus screening device used to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Webb*, 433 F.3d at 687 (citations omitted).[2]

B. <u>Res Judicata Effect of ALJ Akers's 1998 Step Two Determination</u>

In general, "[t]he principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez*

---

[2] Defendant argues that the instant case is distinguishable from most disability cases because "the step 2 inquiry is the final inquiry in light of Plaintiff's adverse medical-vocational profile under 20 C.F.R. § 416.962(b)." Opp. at 3 n.1. Under 20 C.F.R. § 416.962, an applicant is disabled if he or she has a medically determinable impairment, is of advanced age, has a limited education, and has no past relevant work experience. Thus, once "the ALJ found that Plaintiff has a severe impairment, 20 C.F.R. § 416.962(b) would direct a finding that Plaintiff was disabled based on her age and vocational profile." Opp. at 3 n.1. Because the analysis ends at step two, Defendant argues that the step two inquiry should be evaluated as more than a screening device, presumably requiring Plaintiff to satisfy a higher burden of proof to demonstrate a severe impairment.

Defendant presents no authority that treats the step two inquiry differently where the applicant meets the special medical-vocational profile. Furthermore, in requiring a "severe, medically determinable impairment," 20 C.F.R. § 416.962(b) refers to § 416.920(c), which describes step two of the five-step process. This further suggests that the step two inquiry is not different even where the applicant meets the special medical-vocational profile.

1  *v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). A prior decision finding that the claimant is disabled
2  thus gives rise to a presumption that the claimant remains disabled unless there are "changed
3  circumstances." *Id.* Even if there are changed circumstances:

> [a]djudicators must adopt . . . a finding on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is **new and material evidence** relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSR 97-4(9) (emphasis added) (discussing effect of *Chavez* on Social Security determinations in the Ninth Circuit).

In the instant case, although ALJ Akers did not explicitly find a severe mental impairment, ALJ Laverdure acknowledged that "ALJ Akers implicitly found that the claimant suffered from post-traumatic stress disorder and depression; inasmuch as he proceeded through step five of the sequential evaluation process, he must have found those impairments severe at the time." AR 497; *see also* AR 498. ALJ Laverdure did not give binding effect to ALJ Akers's 1998 determining regarding whether Plaintiff had a severe mental impairment.[3] Instead, ALJ Laverdure found that binding effect did not need to be given to ALJ Akers's conclusion that Plaintiff was not disabled because there were "changed circumstances" based on Plaintiff turning 55 in June 1999, making Plaintiff a "person closely approaching retirement age." AR 26, 496.

In addition to these "changed circumstances," ALJ Laverdure concluded that it was not necessary to give binding effect to ALJ Akers's step two findings because "subsequent material evidence . . . precludes giving binding effect to that finding." AR 497. Specifically, ALJ Laverdure found that "[a]ssuming that ALJ Akers believed that the claimant's post-traumatic stress disorder and depression was severe at the time of his decision, the current evidence indicates that these conditions have improved over time." AR 498. First, Plaintiff reported that she was paid by her daughter to babysit her grandchild from 1999 to 2002, after ALJ Akers's 1998 decision,

---

[3] ALJ Laverdure did give binding effect to ALJ Akers's 1998 determination that Plaintiff was not physically disabled. AR 27, 497 ("I find *no* reason to disagree with [Judge Akers's] finding that the claimant has no severe *physical* impairments.").

1  demonstrating the ability to make complex decisions related to caring for a child. AR 500. Second,
2  Plaintiff testified that she was able to drive, whereas in ALJ Akers's 1998 decision, Plaintiff was
3  able only to "occasionally take the bus." *Compare* AR 504 *with* AR 47. Thus, as there was
4  evidence of increased functionality which was relevant to the severity finding, ALJ Lavedure was
5  not required to give res judicata effect to ALJ Akers's 1998 decision.[4]

6  Further, there was additional evidence of malingering, primarily in Dr. Cecilia Hardey's
7  diagnosis. *See* AR 330-333. Dr. Hardey performed a mental status exam on Plaintiff, and came to
8  the conclusion that Plaintiff was "obviously malingering," and that she had "sufficient mental ability
9  to perform most occupational tasks and to manage her financial resources in her own best interest."
10 AR 333. While Judge Akers also considered evidence of malingering from other consultative
11 examiners in his 1998 decision, Dr. Hardey's opinion was new evidence that further confirmed the
12 prior findings of malingering. Further, Dr. Hardey's opinion was based on independent tests rather
13 than observations of Plaintiff's more subjective behavior and complaints. Based on Dr. Hardey's
14 diagnosis of malingering and testimony about Plaintiff's daily activities that evidenced improvement
15 in her abilities, ALJ Laverdure was entitled to not give binding effect to ALJ Akers's findings.

16 C.   Step Two Severe Impairment Determination

17 In the instant case, the parties dispute whether Plaintiff provided sufficient evidence that she
18 suffered severe medical impairment, and whether ALJ Laverdure sufficiently considered the
19 evidence presented or explained why he did not find the evidence persuasive.

20 Plaintiff argues that she has produced sufficient evidence to meet the minimal burden at step
21 two, and that evidence from all treating sources establishes that she had more than a "slight"
22 abnormality with "no more than a minimal effect" on he work-related abilities. Motion at 11. First,
23 Plaintiff cites observations by Community Gateways's mental health worker, Chhom Chhuy, noting
24 symptoms of depression, insomnia, daily nightmares, excessive anxiety, and somatic complaints.

---

[4] ALJ Laverdure had also cited to Plaintiff's failure to seek consistent treatment except between January and July 2003. AR 498. Given the Ninth Circuit's recognition that a person suffering from depression cannot be blamed for failure to seek treatment, this fact alone is not material evidence of improvement as Plaintiff's failure to seek treatment should not be held against her. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

1  AR 388. Chhuy referred Plaintiff to Mona Afary, a licensed marriage and family therapist with a
2  PhD in clinical psychology. AR 762. Dr. Afary diagnosed PTSD and major depressive disorder,
3  and after eight months of treatment, concluded that Plaintiff could not sustain employment because
4  of an inability to interact with others on a professional level, make decisions, and adapt to stresses
5  common to the work environment. AR 372-81, 386-88.

Other treating physicians made similar diagnoses. In April 2001, a physician's assistant at the Asian Health Services Medical Clinic diagnosed Plaintiff with depression and anxiety. AR 359. In May 2003, Dr. William Wallin diagnosed Plaintiff with PTSD and prescribed Prozac and Trazadone. AR 327-28. In May 2004, Dr. Lien Luong prescribed Trazadone for insomnia. Finally, in February, April, and August 2006, Dr. Kimberly Chang diagnosed Plaintiff with PTSD and referred Kong for counseling and possible EMDR.[5] AR 652, 655, 657. These diagnoses were consistent with records from treating physicians in Plaintiff's prior SSI claim, where Plaintiff's former treating psychiatrist, Nang Du, had diagnosed Plaintiff with PTSD.

Plaintiff also provided evidence by Plaintiff's daughter, Julie Kong. Julie testified about Plaintiff's inability to learn a job at a casino, which Julie attributed to Plaintiff's impairments. AR 464-65, 504. Julie also testified that she was concerned by Plaintiff's driving, as Plaintiff sometimes drove to the wrong house. AR 466. Finally, Julie testified that she had seen Plaintiff crying and sad, and that Plaintiff said she felt dizzy, could not sleep, and had nightmares. AR 466. Julie opined that Plaintiff could not work full time because Plaintiff needed rest due to her sickness and her headaches. AR 466.

Defendant in turn contends that ALJ Laverdure's 2009 denial of Plaintiff's claim fully complied with the Court's 2007 order, which found that ALJ Laverdure's 2005 denial was in error because ALJ Laverdure failed to evaluate Dr. Mona Afary's opinion in light of *Orn v. Astrue*, failed to specifically address the findings of Dr. William Wallin and Dr. Lien Luong, and failed to address testimony by Plaintiff's daughter, Julie Kong. AR 527. Defendant argues that the ALJ Laverdure's 2009 finding of no severe medical impairment includes a detailed explanation for why ALJ

---

[5] EMDR, or eye movement desensitization and reprocessing, is recommended by the Veterans Administration for the treatment of PTSD. Motion at 12 n.6.

Laverdure rejected the evidence presented by Plaintiff, and is further supported by Dr. Cecilia Hardey's diagnosis of malingering. AR 333. This diagnosis was in turn consistent with the diagnoses of consultative examiners in Plaintiff's prior SSI claim. AR 501; *see also* AR 136-38 (observing that Plaintiff volitionally not participating in the exam), 139-40 (diagnosing malingering), 163-70 (diagnosing depression but observing that Plaintiff made limited effort on the tests). Thus, Defendant contends that ALJ Laverdure's denial is supported by substantial evidence, and should be upheld on review.

### 1. Rejection of Dr. Afary's Opinion

The Court finds that ALJ Laverdure properly explained his rejection of Dr. Afary's opinion. In remanding ALJ Laverdure's 2005 denial of Plaintiff's claim, the Court found that "[t]he ALJ should evaluate Dr. Afary's opinion in light of *Orn*." AR 527. In *Orn*, the Ninth Circuit reiterated the Social Security Administration's rule favoring the opinion of a treating physician over non-treating physicians:

> If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] card record, [it will be given] controlling weight. If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given.

495 F.3d 625, 631 (9th Cir. 2007) (quoting 20 C.F.R. § 404.1527(d)(2)). These factors include: (1) the length of the treatment relationship and the frequency of examination by the treating physician, (2) the nature and extent of the treatment relationship between the patient and the treating physician, (3) the amount of relevant evidence and the quality of explanation that supports the opinion, (4) the specialty of the diagnosing physician, and (5) the physician's familiarity with other information in the court record. *Id.*

Even if the treating physician's opinion is not well-supported or is inconsistent with other substantial evidence, the ALJ should not reject the opinion "without providing specific and legitimate reasons supported by substantial evidence in the record." *Id.* at 632 (citations omitted). In explaining why an opinion is being rejected, the ALJ must do more than offer his own

conclusions, but should instead "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Furthermore, the Ninth Circuit found that "[w]hen an examining physician relies on the same clinical findings as the treating physician, but differs only in his or her conclusion, the conclusions of the examining physician are not 'substantial evidence.'" *Id.* Instead, substantial evidence exists where the "examining physician provides independent clinical findings that differ from the findings of the treating physician," such as findings based on objective medical tests that the treating physician did not perform. *Id.* (citations omitted).

The Court finds that in rejecting Dr. Afary's opinion, ALJ Laverdure addressed the *Orn* factors and provided specific reasons supported by the record. First, ALJ Laverdure discussed the length of the treatment relationship and its nature, finding that "Dr. Afary allegedly evaluated the claimant on two occasions, and much of her information came through a third party, Chhom Chhuy, whose expertise and credentials are nowhere established in this record." AR 499. Based on this finding, ALJ Laverdure expressed skepticism over whether Dr. Afary was a treating source, given the limited treatment relationship between Dr. Afary and Plaintiff. AR 499. This limited treatment relationship entitled ALJ Laverdure to give Dr. Afary's opinion less weight.

Second, ALJ Laverdure discussed the amount of relevant evidence on the record and the quality of Dr. Afary's explanation. ALJ Laverdure found that Dr. Afary's opinion was contradicted by Dr. Hardey's diagnosis of malingering, which was based on independent clinical findings and was consistent with the results of exams performed on Plaintiff in 1994 and 1997. AR 499, 501; *see also* AR 330-333. ALJ Laverdure also found that Dr. Afary's conclusion that Plaintiff had poor memory and decision making skills was contradicted by Plaintiff's testimony about her life activities, such as passing her driver's license and citizenship tests, babysitting her grandchild on a regular basis, managing her finances, and ability to drive. AR 500. ALJ Laverdure concluded that contrary to Dr. Afary's opinion that Plaintiff could not make simple decisions, these activities required many decisions such as deciding where and when to spend Plaintiff's limited monthly funds, how quickly to drive, and how to take care of a child. AR 500. As Plaintiff made such

decisions on a regular basis, Plaintiff's testimony about her regular activities contradicted Dr. Afary's opinion and diminished the reliability of her opinions. AR 500.

ALJ Laverdure also discussed the limited value of Dr. Afary's explanation for her diagnosis, pointing to the lack of medically acceptable diagnostic techniques and objective evidence, as well as internal contradictions. AR 499, 500. For example, in her October 2003 report, Dr. Afary referred to Plaintiff's poor memory, but provided no objective support for this finding. AR 500. Dr. Afary also concluded that Plaintiff could not interact with others on a professional level, keep attendance, make decisions, or adapt to stresses common to the work environment, with no specific support for this opinion. AR 500. ALJ Laverdure found that a subsequent April 2004 report did not cure these evidentiary defects, as the April 2004 report was almost word for word identical to the October 2003 report. AR 500-01; *compare* AR 372-76 (April 2004 Report) *with* AR 377-81 (October 2003 Report). The only difference in the two reports was Dr. Afary's prognosis, which stated in the April 2004 report that Plaintiff was unable to work due to her severe preoccupation with her life's trauma, her depression, and her impairment of memory and concentration. AR 501. However, ALJ Laverdure again found that this opinion was not supported by any objective evidence. AR 501. Thus, ALJ Laverdure found that Dr. Afary's opinion was based almost entirely on Plaintiff's self-reported history, and "assume[d] the existence of mental disorders, and then appear to search for a appropriate symptoms." AR 501. Because Dr. Afary's opinion was not well-supported and contradicted by other evidence on the record, ALJ Laverdure was entitled to give less weight to her opinion.

Third, ALJ Laverdure discussed Dr. Afary's specialty. Dr. Afary is not a licensed psychologist, but a marriage and family therapist. AR 499, 762. Plaintiff's counsel further stipulated that Dr. Afary was not an acceptable medical source to establish a medically determinable impairment. AR 795. Given that Dr. Afary was not a licensed psychologist, her opinion on Plaintiff's psychological impairments has less value than the diagnosis of a physician with the appropriate specialty. Thus, the fact that Dr. Afary was not a medically acceptable source weighs against giving her opinion as much weight.

11

Having considered the *Orn* factors, ALJ Laverdure was entitled to reject Dr. Afary's opinion. ALJ Laverdure discussed Dr. Afary's limited treatment relationship with Plaintiff, evidence on the record that contradicted Dr. Afary's opinion, internal contradictions within Dr. Afary's opinion, and the fact that Dr. Afary was not an acceptable medical source but a marriage and family therapist. AR 499-501. In addition to addressing the *Orn* factors, ALJ Laverdure emphasized the lack of objective evidence supporting Dr. Afary's opinion. Unlike Dr. Hardey's diagnosis of malingering, which was supported by an independent test, Dr. Afary's opinion was primarily based on Plaintiff's subjective complaints and behavior. The Ninth Circuit has found that an ALJ may disregard a medical opinion where the opinion lacked objective support and instead relied only on the claimant's subjective complaints. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings); *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings."); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The ALJ need not accept an opinion of a physician – even a treating physician – if it is conclusionary and brief and is unsupported by clinical findings").

ALJ Laverdure's rejection of Dr. Afary's opinion for lack of objective evidence is further supported by his review of Dr. Afary's records, which Dr. Afary provided when ALJ Laverdure re-contacted her. AR 501; *see also* AR 740-43, 764-65. ALJ Laverdure found that these records "add little to my understanding of the claimant or her treatment, since they are simply reflections of the claimant's complaints and lists of her medications. There is no indication of mental status examinations, other clinical testing, or other assessments or diagnoses." AR 502. Thus, ALJ Laverdure was entitled to disregard Dr. Afary's opinion, which evidently was based solely on Plaintiff's subjective complaints and behavior. Furthermore, ALJ Laverdure provided "specific and legitimate" reasons for rejecting the opinion; those reasons were supported by substantial evidence in the record. *Orn*, 495 F.3d at 632. Accordingly, the Court finds that ALJ Laverdure sufficiently explained why he rejected Dr. Afary's opinion.

### 2. Rejection of Dr. Wallin's, Dr. Luon's, and Dr. Chang's Opinions

The Court finds that ALJ Laverdure sufficiently explained why he rejected the opinions of Plaintiff's physicians. In remanding ALJ Laverdure's 2005 decision, the Court had found that the 2005 decision did not discuss Dr. Wallin's and Dr. Luong's opinions diagnosing Plaintiff with a mental impairment and prescribing medication. AR 518, 521. Thus, the Court required that ALJ Laverdure explain why these opinions were rejected.

In his 2009 denial of Plaintiff's claim, ALJ Laverdure specifically considered the opinions of Dr. Wallin, Dr. Luong, and Dr. Chang, and concluded that they did not support Dr. Afary's opinion. AR 502. As required by *Orn*, ALJ Laverdure first addressed the limited treatment relationship between these physicians and Plaintiff, noting that the physicians had a sporadic treatment history of Plaintiff. AR 503. Second, ALJ Laverdure found that the nature and extent of these treatment relationships was focused on physical and age-related conditions rather than mental symptoms. AR 502-03. Third, ALJ Laverdure found that the physicians' opinions were based on statements of symptoms rather than any independent medical evidence or diagnostic techniques. AR 502-03. Finally, ALJ Laverdure found that these physicians were primary care physicians, not psychiatrists or mental health specialists. AR 503. Taken together, ALJ Laverdure was entitled to give significantly less weight to the physicians' opinions given the *Orn* analysis.

In addition, ALJ Laverdure cited the fact that the physicians' opinions were based on a recitation of Plaintiff's complaints and were contradicted by evidence of Plaintiff's daily activities. AR 502-03. Like Dr. Afary's opinion, the physicians' findings were dependent on Plaintiff's subjective complaints and behavior, which ALJ Laverdure found were unreliable given findings of malingering. Although the physicians did prescribe medication to treat depression and insomnia, these prescriptions were again based on Plaintiff's description of her symptoms and not on clinical tests, in contrast to Dr. Hardey's malingering diagnosis based on a clinical examination. As these physicians relied entirely on Plaintiff's subjective allegations, which ALJ Laverdure found not credible, ALJ Laverdure could disregard the physicians' findings or give them less weight than Dr. Hardey's diagnosis.

### 3. Rejection of Witness Testimony

Finally, the Court finds that ALJ Laverdure sufficiently explained why he gave less weight to the witness testimony. The Court previously found that ALJ Laverdure articulated adequate reasons for finding Plaintiff's credibility diminished, and that there was substantial evidence in the record supporting the finding. AR -. In ALJ Laverdure's 2009 opinion, ALJ Laverdure again found that Plaintiff's testimony was not fully credible, on the ground that the claimant's activities contradicted her allegations of disabling limitations. AR 504. Specifically, ALJ Laverdure found that Plaintiff cleaned, prepared meals, shopped for groceries, did laundry, planted vegetables, took care of her personal needs, paid her bills, talked to friends and relatives, and occasionally drove or took the bus. AR 504. ALJ Laverdure also pointed to the multiple diagnoses of malingering and discrepancies during the hearing regarding her English ability. AR 504. Thus, ALJ Laverdure's discrediting of Plaintiff's testimony was supported by sufficient findings.

Second, ALJ Laverdure discounted Julie's testimony as "un-enlightening." In general, "[i]f the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Here, ALJ Laverdure disagreed with Julie's opinion that Plaintiff's inability to learn a job at a casino was because of Plaintiff's impairments, finding that Plaintiff's inability to learn a job was consistent with a limited education, no meaningful work experience, and limitations in English. AR 504. ALJ Laverdure also concluded that the fact that Plaintiff needed assistance was consistent with age, and not necessarily the result of a medical impairment. AR 504. Finally, ALJ Laverdure found that Julie's "third party observations, particularly in light of a less than credible claimant, simply are not persuasive." AR 504. While Julie's observations of Plaintiff's symptoms could have demonstrated some impairment, it was still dependent on Plaintiff's more subjective behavior. As ALJ Laverdure had found that Plaintiff's behavior was unreliable, given her contradictory testimony and multiple diagnoses of malingering, ALJ Laverdure was entitled to give less weight to Julie's observations.

Considering the evidence as a whole, ALJ Laverdure provided a sufficient explanation for why he rejected the opinions of Dr. Afary, Dr. Wallin, Dr. Luong, and Dr. Chang under *Orn*, as well as the testimony of Plaintiff and Julie. In addition, these medical opinions lacked objective support,

and observations by the physicians and Julie relied on Plaintiff's unreliable subjective complaints and behavior. ALJ Laverdure was thus entitled to rely primarily on Dr. Hardey's diagnosis of malingering, which was based on an independent examination and was consistent with other exams. Dr. Hardey's diagnosis based on an independent examination of Plaintiff along with prior findings of malingering constitutes substantial evidence that Plaintiff lacks a severe medical impairment. *See Tonapetyan*, 242 F.3d at 1149 ("Dr. Schatz's opinion alone constitutes substantial evidence, because it rests on his own independent examination of [the claimant]"); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("to the extent that Dr. Schostal's opinion rests on objective clinical tests, it must be viewed as substantial evidence that [the claimant] is no longer disabled"). Notably, Dr. Hardey was not the only independent examiner to diagnose malingering; ALJ Laverdure found that Dr. Hardey's diagnosis confirmed prior diagnoses of malingering from 1994 and 1997, adding further credibility to Dr. Hardey's findings. AR 501; *see also* AR 136-40, 163-70. Further, there was evidence that Plaintiff had capabilities beyond her allegations of disabling limitations based on Plaintiff's daily activities. AR 504. Thus, ALJ Laverdure's step two finding was based not only on the rejection of Plaintiff's evidence which was based primarily on subjective evidence, but on multiple diagnoses of malingering based on objective clinical examinations of Plaintiff and Plaintiff's testimony about her daily activities

      The Court concludes that ALJ Laverdure could reasonably find that Plaintiff's evidence was based primarily on subjective complaints and behavior, in contrast to the more objective examinations that found malingering. Accordingly, the Court finds that ALJ Laverdure's decision to reject Plaintiff's evidence and rely primarily on Dr. Hardey's diagnosis in finding that Plaintiff did not satisfy the step two determination is supported by substantial evidence.

///
///
///
///
///
///

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross-motion for summary judgment. The Clerk of the Court is directed to close the file in this case.

This order disposes of Docket Nos. 18 and 25.

IT IS SO ORDERED.

Dated: April 20, 2012

_____
EDWARD M. CHEN
United States District Judge